UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| In re:  WILMARILYN COTTO, | : | Case No. 15-15829REF |
| Debtor | : | Chapter 13 |

| RAWLE BRUCE and MIGDALIA | : | Adv. Case No. 15-376 |
| MARIN, | : | |
| Plaintiffs | : | |
| v. | : | |
| WILMARILYN COTTO, | : | |
| Defendant | : | |

# **ORDER**

AND NOW this 25 day of October, 2016, based upon the discussion in the accompanying Statement,

IT IS HEREBY ORDERED that Plaintiffs' request for relief from the automatic stay of Section 362 is hereby DENIED as moot for the purpose of Debtor's discharge of any debt owed to Plaintiffs.

IT IS FURTHER ORDERED that if Plaintiffs desire to file a claim to establish the amount of any claim against Debtor in this no-asset, no-distribution Chapter 7 case, they may do so on or before November 3, 2016, or it will be deemed waived.

IT IS FURTHER ORDERED that if Debtor desires to oppose the claim, she shall do so on or before November17, 2016

BY THE COURT

Richard E. Fehling, U.S.B.J

18

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| In re:  WILMARILYN COTTO, | : | Case No. 15-15829REF |
| Debtor | : | Chapter 13 |

| RAWLE BRUCE and MIGDALIA | : | Adv. Case No. 15-376 |
| MARIN, | : | |
| Plaintiffs | : | |
| v. | : | |
| WILMARILYN COTTO, | : | |
| Defendant | : | |

# STATEMENT SUPPORTING BENCH ORDER DATED OCTOBER 3, 2016, AND WRITTEN ORDER DATED OCTOBER 4, 2016

Plaintiffs in the above adversary proceeding seek (a) relief from the automatic stay to resume pre-petition litigation, (b) a judgment fixing the amount of their claim against Debtor, and (c) a determination that the claim owed to them should be found to be nondischargeable under Section 523(a)(2)(A) of the Bankruptcy Code. At the end of the October 3, 2016 trial in this case, I issued a bench order entering judgment for Debtor/Defendant. The next day, October 4, 2016, I issued a written order ratifying, restating, and reiterating (but not replacing) the bench order judgment in favor of Debtor and against Plaintiffs. I had ruled from the bench for two reasons. First, the parties had been in stasis for nearly a

1

year and a half and I wanted to allow them to move on with their lives as soon as possible. Second, no complicated issue of fact or law existed and I thought my oral explanation of why I believed Debtor should be the prevailing party sufficed.

My bench order and my written order were entered based upon the discussion on the record at the trial, including my discussion about the controlling facts and law. On October 13, 2016, however, Plaintiffs filed a notice of appeal from my written order dated October 4, 2016.[1] This Statement, filed in support of both the bench order[2] and the written order, is filed pursuant to the authority of L.B.R. 8001-1(b) (Bankr. E.D. Pa.), which permits me to file a written opinion or statement in support of the two previous orders.[3] Following are the facts and law on which I base my decision:

1. Plaintiffs were parties with Debtor in a "rent to own" lease/purchase agreement for their home in Reading, PA (the property" or the "premises").

2. The original contract, dated September 15, 2010, Exh. P-1 (the "Original Agreement"), was replaced by a second contract dated September 9, 2011, Exh. D-1 (the "Agreement").

---

[1] Plaintiffs filed no appeal from the October 3, 2016 bench order.
[2] But see note 1, supra.
[3] L.B.R. 8001-1(b) is derived from L.A.R. 3.1 of the Third Circuit's Local Rules.

3. After only one year, by summer 2011, Plaintiffs were in default of the rent payment terms of the Original Agreement.

4. Debtor could, therefore, have declared the Original Agreement in default and could have dispossessed Plaintiffs of the property.

5. Rather than terminating and declaring the Original Agreement to be in default, Debtor presented the Agreement to Plaintiffs as a new agreement that would allow Plaintiffs to stay in the property, catch up on the payments that Plaintiffs had failed to make, and ultimately acquire the property.

6. Plaintiffs do not dispute that they voluntarily signed the Agreement, which was then appropriately notarized.

7. The Agreement constituted a novation, or substituted contract, for which four elements are required:

   a. The Original Agreement, including Debtor's possible remedies against Plaintiffs, was displaced because of Plaintiffs' default;

   b. The Agreement is a valid, duly executed and notarized, contract and was substituted in place of the Original Agreement;

3

    c. Permission for Plaintiffs to continue residing at, and possibly eventually owning, the property constituted benefits to Plaintiffs and legal consideration for the Agreement; and

    d. Plaintiffs and Debtor consented to the extinction of the Original Agreement and replacement by the Agreement.

First Lehigh Bank v. Haviland Grille, Inc., 704 A.2d 135, 138-39 (Pa. Super. 1997).

8. The Original Agreement and the Agreement were prepared and produced by Debtor.

9. Plaintiffs made no comments about the agreements and did not ask for a review by counsel or any other person despite the specific advice to do so in ¶ 40 of each of the agreements.

10. The two differences between the Original Agreement and the Agreement are (a) the initial dates and the durations of each agreement and (b) the rent payment terms in ¶ 2 of each agreement (rent payments were paid by Plaintiffs to Debtor by depositing the funds in Debtor's bank to be credited as payments of Debtor's mortgage).

11. Both the Original Agreement and the Agreement contain identical ¶ 7s, which required Plaintiffs to maintain the premises during the time of the agreement.

12. Both the Original Agreement and the Agreement contain identical ¶ 31s, both of which state:

> 31. REPAIRS: In the event repairs are needed beyond the competence of [Plaintiffs], [they are] urged to arrange for professional assistance. THE [PLAINTIFFS] WILL BE RESPONSIBLE FOR THE ENTIRE COST OF THAT REPAIR. Any improvement made by [Plaintiffs] shall become the property of the dwelling at the conclusion of the agreement. (Emphasis in original).

13. The Agreement expired September 9, 2014, rendering Plaintiffs tenants at will thereafter in a month to month rental.

14. Plaintiffs were in default of the Agreement because they had failed to pay the amounts that were owed under the Agreement.

15. Plaintiffs did not dispute that they were in default of the Original Agreement when they signed the Agreement with Debtor.

16. Tragically, Plaintiffs' home suffered severe damage from a house fire in late March 2015.

17. Plaintiffs' home remained habitable, despite the fire and smoke damage, and was not condemned by the city of Reading.

18. Plaintiffs continued to live in the premises after the fire.

5

19. Pursuant to ¶ 31 of both the Original Agreement and the Agreement, Plaintiffs were obliged to repair all damage and were "responsible for the entire cost of that repair."

20. Plaintiffs failed to obtain renters' insurance that might cover their interest in the property, relying solely on the property insurance that was paid to the bank through Debtor's monthly mortgage payments.

21. Plaintiffs allege that Debtor said and promised, at the time and scene of the fire, that she would make a claim for insurance proceeds and use the insurance proceeds to repair the property.

22. Plaintiffs' imply that Debtor's alleged comments constituted an oral change to the Agreement.

23. Plaintiffs are attempting to eliminate ¶ 31 from the agreements; ¶ 31 clearly required Plaintiffs themselves to repair the fire damage.

24. Debtor denies making any such statement, testifying to the contrary that (a) she may have spoken about trying to obtain the insurance proceeds, but (b) she would decide what to do with the insurance proceeds check when she received it.

6

25. The scene of a fire is not a conducive circumstance, time, or location in which to discuss serious business/family decisions such as renegotiating a lease.

26. Shortly after the fire, Plaintiffs retained counsel (the same lawyer who is representing them in this adversary proceeding and appeal).

27. On April 24, 2015, counsel wrote to Debtor through a letter that demanded that Debtor immediately turn over to Plaintiffs the check for the insurance proceeds. Exh. P-7.

28. In his letter to Debtor, Plaintiffs' counsel failed to mention anything about any alleged promise made by Debtor at the fire scene to pay the insurance proceeds to Plaintiffs.

29. To the contrary, Plaintiffs' counsel's letter:

   a. Demanded the mortgage documents with Debtor's bank;

   b. Acknowledged that ¶ 31 of the agreements required Plaintiffs to repair the fire damage;

   c. Wholly misrepresented that Plaintiffs had obtained their own homeowners' insurance on the property;[4]

---

[4] Plaintiffs persisted in pressing this misrepresentation at trial. Both they and their counsel acknowledged that the only insurance on the premises was not theirs but was the insurance required by Debtor's mortgage lender. The premiums for the bank's insurance were paid as part of the monthly rent paid by Plaintiffs pursuant to the requirements in both of the agreements. In no way, however, did Plaintiffs obtain any of their own casualty insurance covering damage to the premises.

d.  Demanded, as an obligation under the agreements that
Debtor forward the insurance proceeds check as well as all
insurance documents to Plaintiffs (with no reference to
anything in the agreements that created such an obligation);

e.  Requested that Debtor waive the abandonment paragraph in
the agreements if Plaintiffs decided to reside elsewhere
while the premises were being repaired; and

f.  Informed Debtor erroneously that, because the full purchase
price of the property had been paid, Plaintiffs would escrow
all future rent payments.

30. Plaintiffs' complaint is incorrectly based solely on the Original
Agreement; the Agreement was in effect after the September 2011
novation, not the Original Agreement.

31. The complaint and the evidence at trial listed numerous payments
made by Plaintiffs for rent, repairs, and improvements, all made
before the fire as required of them by the requirements of either or
both agreements.

32. Plaintiffs once again incorrectly claim, in ¶ 26 of their complaint,
that they paid the insurance premiums; this allegation is
completely wrong because Plaintiffs paid only the rent under the

8

agreements by making the monthly mortgage payments to Debtor's bank.

33. Plaintiffs allege that Debtor obtained the insurance proceeds pursuant to the agreement and was obliged to repair the fire damage with those proceeds.

34. Plaintiffs presented no credible[5] testimony or exhibits at trial that established a duty of Debtor owed to Plaintiffs to repair the fire damage, with or without the insurance proceeds.

35. Again, ¶ 31 of both agreements specified that Plaintiffs, not Debtor, were responsible to pay for all repairs to the premises.

36. Plaintiffs attempted through the trial to avoid the discharge of their pre-fire expense claim by alleging fraud and false pretenses by Debtor based on Debtor's failure to use the insurance proceeds to repair the premises.

37. Plaintiffs failed to plead any specific fraud or fraudulent statement in their complaint.

38. Plaintiffs failed to meet their burden of proving that Debtor obtained the insurance check by false pretenses, misrepresentation,

---

[5] As I note throughout this Statement, I do not accept as credible Plaintiffs' allegations about Debtor's promises to repair the property with the insurance proceeds.

or fraud, which would have required proof that Debtor obtained the

check from the insurance company improperly.

39. Debtor obtained the insurance proceeds legitimately.

40. Fundamentally, Plaintiffs pled what was simply a breach of

contract action, which is not grounds for challenging the

dischargeability of the debt allegedly owed by Debtor to Plaintiffs.

Carto v. Oakley (In re Oakley), 503 B.R. 407, 432-33 (Bankr. E.D.

Pa. 2013); EDM Machine Sales, Inc., v. Harrison (In re Harrison),

301 B.R. 849, 854 (Bankr. N.D. Ohio 2003).

41. Plaintiffs' complaint fails to refer in any way to specific (or even

general) comments or promises made by Debtor at the fire scene or

thereafter.

42. Plaintiffs' evidence and argument at trial were very difficult to

follow, but they appear to have been primarily based on the

statements and promises that Debtor is alleged to have made at the

scene of the fire.

43. I find that Debtor's alleged statements and promises, if made at

all, were comments uttered under duress during a traumatic event;

they fail to support Plaintiffs attempt to convert a totally

10

dischargeable breach of contract claim into a non-dischargeable fraud claim.

44. Plaintiffs apparently failed to inform their counsel about Debtor's alleged statements and promises about use of the insurance proceeds to make repairs, because counsel failed to include mention of such alleged promises in either or both of the April 2015 demand letter or the complaint.

45. I accept Debtor's testimony as most reasonable and accurate in her statement that the parties might have discussed the insurance proceeds but that she did not promise to use them to repair the property.

46. Both the April 2015 letter and the complaint in this matter occurred shortly after the fire, when Plaintiffs' recollection about such a critical fact would have been better than at the trial earlier this month, over a year and a half after the fire.

47. Based upon the above, I find as a fact in this case that Debtor may have said something about the insurance proceeds but that she did not say or promise that she would give any insurance proceeds to Plaintiffs or pay to repair any of the fire damage to the property.

48. Also based upon the above, I find as a fact in this case that Debtor made no misrepresentation to Plaintiffs and made no fraudulent statement to Plaintiffs relating to disposition or use of the insurance proceeds from the fire.

49. Plaintiffs were obliged to prove by a preponderance of the evidence some fraudulent statement or misrepresentation by Debtor as a fundamental element of their case, but they failed to do so.

50. Plaintiff/creditor bears the burden of proving all elements of nondischargeability by a preponderance of the evidence. Oakley, 503 B.R. at 431-34. See also Graham v. Internal Revenue Service (In re Graham), 973 F.2d 1089, 1101 (3d Cir. 1992).

51. Through the months that they were living in the property under first the Original Agreement and then the Agreement, Plaintiffs sporadically paid to the bank some (but not all) of Debtor's mortgage payments as their rent; some (but not all) of the additional payments of principal on the mortgage required under the Agreement, utilities (which they enjoyed while living there); and a large amount (no proof of actual payment was offered - only a summary sheet was presented) of so-called repairs to the

12

premises, many of which were upgrades and improvements, built

and paid for at Plaintiffs' risk.

52. The regular monthly payments to the bank included principal,

interest, escrowed real estate taxes, and insurance premiums all in

the single mortgage payment owed as rent to Debtor's bank.

53. After the fire, Plaintiffs made no further such payments (except

perhaps paying utilities, although Plaintiffs failed to testify as

much).

54. Plaintiffs ceased making the regular monthly mortgage payments

to the bank, but claimed in the trial to have escrowed some of them

in some unproven bank account.

55. By their admission, Plaintiffs failed to deposit all monthly

payments into the escrow account.

56. Plaintiffs' claim of escrowing monthly mortgage payments was

set forth with exceedingly flimsy evidence that I reject.

57. Based upon the above, I find as a fact in this case that Plaintiffs

made few or no deposits into an escrow account rather than pay the

monthly payments to Debtor's lender.

58. At trial, Plaintiffs' primary argument was: (a) Debtor made certain

alleged promises about her anticipated disposition of the insurance

payment when she received it;[6] (b) Plaintiffs relied upon the promises of Debtor at the fire scene;[7] and (c) Plaintiffs claim to have made all of their pre-fire payments of Debtor's mortgage, the repairs and upgrades, utilities, etc., in reliance on Debtor's statements and promises at the fire scene.

59. The fantastical nature of the third element of Plaintiffs' proof was my most-discussed basis for my bench order at the trial.

60. I repeatedly remarked at the trial that Plaintiffs were trying to claim that acts that pre-dated the fire had been done in reliance on Debtor's alleged promise at the fire scene.

61. It is impossible for Plaintiffs to have done anything before the fire in reliance on Debtor's promises at the fire scene; this logic escaped Plaintiffs.

62. On the other hand, even if Debtor made such a statement,[8] a broken promise to repay a debt, without proving that it was knowingly false at the time it was made, without more, cannot

---

[6] I rejected this element of Plaintiffs' proof as unfounded as described, supra.

[7] Plaintiffs produced no evidence supporting this element other than their naked statements that they relied on Debtor's promises. They presented insufficient support for their allegations. At one point in her testimony, Plaintiff Migdalia Marin said she relied on Debtor's statement about repairing the premises by continuing to live there despite the fire damage. Even if this were true, Plaintiffs failed to prove that they suffered any damage at all after Debtor's alleged statement about disposition of the insurance proceeds. If anything, Plaintiffs continued to live at the property rent-free.

[8] See n. 5, supra.

14

sustain a demand for avoiding the discharge of a debt. Giansante &

Cobb, LLC v. Singh (In re Singh), 433 B.R. 139, 162 (Bankr. E.D.

Pa. 2010).

63. Plaintiffs' counsel argued that Plaintiffs' alleged, post-fire escrow

of the monthly rent payments constituted damages created by

Plaintiffs' reliance on Debtor's alleged promise; but he had no

argument to the counterpoint -- if any such escrow account

existed, Plaintiffs' could simply keep the funds in it, thereby

avoiding all harm.

64. Plaintiffs' testimony was that the escrowed mortgage payments

were the only "payments" made by Plaintiffs after the fire.

65. Because Plaintiffs could keep the escrow account, therefore, they

suffered no damages from Debtor's alleged misrepresentation.

66. In summary, I make the following findings and conclusions of

law:

a. The Agreement superseded the Original Agreement as a

novation;

b. Plaintiffs obtained no casualty insurance covering the

premises or any part of the premises;

c. The Agreement had expired at the time of the fire;

15

d. Debtor did not promise to use the insurance proceeds to repair the fire damage at the property;

e. If Debtor promised to repair the premises (which I find she did not), Plaintiffs failed to prove that Debtor knew the alleged promise was false at the time she made it;

f. If Debtor promised to repair the premises (which I find she did not), Plaintiffs failed to prove that Debtor intended, when she made the alleged promise, not to perform it;

g. Debtor did not defraud Plaintiffs or the insurance company by applying for and receiving the insurance proceeds resulting from the fire damage;

h. Debtor made no misrepresentation, false statement, or fraudulent statement in any way related to this adversary proceeding;

i. Plaintiffs' payments of rent, repairs, maintenance, upgrades, and improvements were done pursuant to Plaintiffs' contractual obligations under both the Original Agreement and the Agreement;

16

j.  Plaintiffs' claim for damages that pre-dated the fire simply could not have been incurred in reliance on the alleged promise made by Debtor at the fire scene;

k.  If Debtor promised to repair the premises (which I find she did not), Plaintiffs suffered no damages whatsoever based upon their reliance on the alleged promise;

l.  Plaintiffs' request for relief from the automatic stay under Section 362 will be DENIED by the Order filed contemporaneously with this Statement; and

m.  Similarly, because my attention in the trial, and the attention of both counsel, was focused primarily on the issue of dischargeability, I made no determination about the amount of Plaintiffs' claim and it remains to be heard, if Plaintiffs wish to pursue it.

DATE:  October 25, 2016                    BY THE COURT

RICHARD E. FEHLING
United States Bankruptcy Judge

17